IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Tonya Roberts, | ) | Case No. 7:23-cv-04058-JDA |
| Plaintiff, | ) | |
| v. | ) | **OPINION AND ORDER** |
| Cherokee County School District, | ) | |
| Defendant. | ) | |

This matter is before the Court on a motion for summary judgment filed by Defendant Cherokee County School District (the "District" or "Defendant"). [Doc. 52.] In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), D.S.C., the case was referred to United States Magistrate Judge Thomas E. Rogers, III, for pre-trial proceedings.

On June 2, 2026, the Magistrate Judge issued a Report and Recommendation ("Report") recommending that Defendant's motion for summary judgment be granted as to Plaintiff's Title VII claims and that the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claim. [Doc. 55.] The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. [Doc. 55-1.] Plaintiff filed objections to the Report on June 16, 2026 [Doc. 56], and Defendant filed a reply on June 30, 2026 [Doc. 57]. For the reasons stated herein, the Court accepts the Report and incorporates it by reference to the extent consistent with this Order, overrules Plaintiff's objections, grants Defendant's summary judgment motion as to Plaintiff's Title VII claims, and declines to exercise supplemental jurisdiction over Plaintiff's state law claim.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation bears no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a de novo determination of only those portions of the Report that have been specifically objected to, and the Court may accept, reject, or modify the Report, in whole or in part. 28 U.S.C. § 636(b)(1). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" (internal quotation marks omitted)).

## APPLICABLE LAW

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## BACKGROUND

In ruling on a motion for summary judgment, the Court reviews the facts and reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013). The Magistrate Judge accurately recounted the parties' joint stipulated facts as follows:

> 1. Plaintiff Tanya Roberts is an African-American female who worked for [the District] as a teacher, Assistant Principal, and Principal from 1998 until June 30, 2021.
>
> 2. Dr. Dana Fall, a white male, was the District's Superintendent and Plaintiff's supervisor from the 2019–20 and 2020–21 school years and remained Superintendent until June 30, 2024.
>
> 3. For the 2019–20 and 2020–21 school years, Plaintiff served as Principal of Mary Bramlett Elementary School (MBES).
>
> 4. In November 2019, during a meeting of the District's Board of Trustees (the Board), Fall was tasked with evaluating the feasibility of closing various schools throughout the District for cost-savings and efficiency reasons. At the time, Dr. Fall informed the Board publicly that Plaintiff's school, MBES, would likely be one of the schools to consolidate or close the following year.
>
> 5. On November 9, 2020, the Board voted to close Alma Elementary, Goucher Elementary, and MBES effective for the 2021–22 school year, thereby eliminating three Principal positions: Alma Elementary School Principal Tracey Allison; Goucher Elementary School Principal Karen Henderson, and MBES Principal Plaintiff. Both Allison and Henderson are white females. Effectively, the Board voted to eliminate the three Principal positions because at the time, there were no openings for . . . 2021–22 to be reassigned.
>
> 6. On January 19, 2021, Fall and Chief of Human Resources Dr. Carl Carpenter[, a black male,] met separately with Plaintiff and Henderson . . . to inform them that, because

of the school closures and absence of available administrative openings, they would be reassigned to teaching positions for 2021–22.

7. As with all faculty and staff displaced by the closure of the three elementary schools, Allison . . ., Henderson . . .[,] and Plaintiff . . . were assured "they would have positions for the 2021–22 school year," even though their administrative positions were reduced.

8. In those meetings, Fall informed Plaintiff that due to the elimination of her administrative position and his concerns over some issues with her leadership skills, "[Plaintiff] would not have an administrative position for the 2021–22 school year due to her performance, based on the MTSS[1] Self[-]Survey results." Fall also notified Henderson that she would not be offered an administrative position due to decreasing test scores at her school, particularly the STARS assessment.

9. Plaintiff finds that the MTSS Survey Scores cited by the District as evidence of Plaintiff's leadership are accurate and reflect MBES.

10. Both Plaintiff and Henderson . . . were offered teaching contracts for 2021–22 at their existing 2020–21 gross principal salaries, which were frozen for one year.

11. Plaintiff's gross salary as Principal was $77,069; Henderson's was $77,291. Also, their 2021–22 contracts would be reduced from the required 233 days down to 190 days, while preserving the higher gross pay.

12. From 2020–21 to 2021–22, Plaintiff's contract would provide her with a daily rate that would go from $330.76/day to $405.63/day—an increase of 23% per day. Henderson's would increase from $310.26/day to $380.48/day—also an increase of 23%.

13. Teachers with similar credentials earned approximately $67,200 for 190 days.

[1] Multi-tiered System of Supports.

14. The reassignment terms for Plaintiff and Henderson—including elimination of the principal positions, reassignment to teaching positions, salary freezes, and performance-related reasons—are reflected in the February 5, 2021, letters from Carpenter.

15. Both [Plaintiff's] . . . and [Henderson's] Principal jobs were eliminated due to the closure, and they were granted teachers' contracts with their gross salaries above the standard rate for teachers with fewer days of work required to fulfill their obligations.

16. Plaintiff filed a grievance on February 16, 2021, alleging demotion without cause and based on discrimination. In her grievance, Plaintiff states that the MTSS Survey is a tool used to measure improvement that an administration "can use" for growth, although it is not required. However, Plaintiff does not allege racial discrimination in her grievance.

17. Henderson also filed a grievance challenging the stated reason for her reassignment.

18. On February 23, 2021, Carpenter denied [Plaintiff's] and Henderson's grievances, explaining that because their positions were eliminated as part of a Reduction in Force [("RIF")], the grievance policy did not apply. The District explained that reassignment with salary intact was consistent with Board Policy GCQA/GCQB.

19. During the spring of 2021, Corinth Elementary School Principal Brenda Sharts submitted her resignation effective April 2, 2021.

20. Based on his discretion and authority as Superintendent, Fall reassigned Allison to serve as Principal of Corinth for the 2021–22 school year.

21. Under District Board Policies GCK and GCF, Fall could fill the vacancy with an internal candidate whom, in his judgment as Superintendent, he determined to be in the best interest of the District and the position.

22. District Board Policy GCF provides that "All vacancies will be filled on the basis of fitness, qualifications, and suitability for the specific position." The policy also grants the Superintendent discretion whether to advertise a mid-year

vacancy. Neither Henderson . . . nor . . . Plaintiff . . . was placed in the Corinth principal position for the 2021–22 school year, despite the RIF hiring procedures applying to the three displaced principals.

[23.] Under District Policy GCQA/GCQB—Instructional Staff/Administrative Staff [RIF—]the District was obligated to consider re-employment of Plaintiff, Henderson, and Allison because their positions were eliminated through a RIF. Pursuant to this policy and his discretion under Board Policy GCF, Fall transferred Allison to the Corinth principal position.

24. Plaintiff signed a teaching contract with the District at Corinth on May 7, 2021, for the 2021–22 school year. Had she remained in the District[,] she would have made $76,580 for 190 days of service.

25. Henderson . . . likewise accepted a teaching contract with the District's gifted and talented program, based at Draytonville Elementary. Like Plaintiff, the District froze her administrator's salary for 2021–22, and she was only required to work for 190 days of service.

26. On May 26, 2021, Plaintiff was offered and accepted a principal position in Marion County School District for the 2021–22 school year.

27. Plaintiff requested release from her binding District contract for 2021–22. Although not required, Fall voluntarily released her, enabling her to accept the Marion position with an annual salary of $77,202.00 for 240 days of service.

28. Fall and Carpenter also granted Plaintiff's request to use [22] vacation days between May 26 and June 30, her last day, despite such extended leave being unorthodox and inconsistent with District policy.

29. Plaintiff completed her annual PADEPP[2] evaluation with Dr. Carpenter on June 17, 2021, prior to her voluntary separation.

[2] Program for Assisting, Developing, and Evaluating Principal Performance.

> 30. For 2022–23, after one year of being Principal in Marion[,] Superintendent Dr. Kandace Beathea[, a black female,] reassigned Plaintiff to an Assistant Principal position but retained her frozen principal salary for 2022–23.
>
> 31. For 2023–24, Plaintiff signed an Assistant Principal contract in Marion, earning $71,814 for 220 days of work, against freezing her principal rate but being paid for the number of days as an assistant principal.
>
> 32. Plaintiff did not remain in Marion for 2023–24. Instead, she obtained a . . . position in Greenville County Schools as a Title I Improvement Coordinator at Tanglewood Elementary School, earning $84,000 annually, with 190 days of service.
>
> . . .
>
> 34. Plaintiff's salary has never decreased since her employment with the District.
>
> 35. Plaintiff remains employed with the Greenville County School District.

[Doc. 55 at 2–8 (citations omitted) (footnotes in original).]

In addition, the Magistrate Judge accurately recounted Defendant's movant's statement of material facts, which Plaintiff does not specifically oppose[3]:

> 1. Pursuant to Board policy and state law, the Superintendent had discretion to reassign displaced administrators.

---

[3] Plaintiff has not filed an opponent's statement of material facts indicating whether the facts in the District's movant's statement of material facts are "disputed" or "undisputed." *See* Summary Judgment Motion Procedures, https://www.scd.uscourts.gov/Forms/Scheduling_Orders/Austin_Rule_56.docx. Accordingly, the facts provided by Defendant in its movant's statement of material facts will be deemed undisputed for the purposes of the District's motion for summary judgment. *See id.* ("All facts asserted in the Movant's Statement of Material Facts or in the Opponent's Statement of Material Facts shall be deemed admitted for the purpose of deciding the summary judgment motion unless specifically disputed or controverted as set forth herein, including specific, pinpoint references to evidence in the record.").

2. Plaintiff was offered and signed a 2021–22 teaching contract at her full principal salary, which exceeded that of a teacher.

3. Henderson, . . . also displaced by the [RIF], was offered a teaching contract with frozen principal pay under the same conditions as Plaintiff.

4. Plaintiff admitted that Henderson "was reassigned the same way I was."

5. Plaintiff acknowledged in her deposition that the District's actions resulted from a "[RIF] situation."

6. When a mid-year vacancy occurred at Corinth elementary, Superintendent Fall was required to select a replacement from among the three displaced principals.

7. Fall selected Allison because of her strong evaluations, consistent student achievement record, and nearly ten years of relevant administrative experience.

8. Plaintiff received a low "1" leadership score on her SAM/MTSS[4] survey, reflecting administrative, staff, and parent perceptions of deficient leadership.

9. Plaintiff admitted that she received this SAM score, although she described it as "fake" and "racist."

10. Henderson's test scores at her school had declined, which contributed to her reassignment.

11. Plaintiff conceded that no one in the District ever directed racial slurs or derogatory remarks toward her.

12. Plaintiff testified that her hostile work environment claim was based instead on being excluded from emails and not receiving additional administrative support during her assistant principal's maternity leave.

[4] Self-Assessment of MTSS.

> 13. Henderson attested that her administrative salary was preserved in her teaching contract despite the reassignment.
>
> 14. Plaintiff voluntarily requested release from her 2021–22 contract to accept a principalship in Marion County, which the District approved.
>
> 15. Allison confirmed in her affidavit that she was reassigned to Corinth pursuant to Fall's decision and based on her qualifications.
>
> 16. Plaintiff did not lose any salary or benefits from her 2021–22 contract and she was not forced to resign.

[*Id.* at 8–10 (citations omitted) (footnote in original).]

Plaintiff filed a Complaint on August 16, 2023. [Doc. 1.] The Complaint brought claims for race discrimination in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*; hostile work environment in violation of Title VII; retaliation in violation of Title VII; and breach of contract and intentional infliction of emotional distress in violation of South Carolina state law. [Doc. 1 ¶¶ 24–49.]

Remaining before the Court are Plaintiff's claims for race discrimination, hostile work environment, and breach of contract against the District.[5] Defendant's motion for summary judgment as to Plaintiff's remaining claims is now pending. [Doc. 52; *see also* Docs. 53; 54.]

**DISCUSSION**

The Magistrate Judge recommends granting Defendant's motion for summary judgment as to Plaintiff's race discrimination and hostile-work-environment claims.

[5] On July 22, 2024, the Court granted Defendants' motion to dismiss Plaintiff's fourth cause of action for intentional infliction of emotional distress and dismissed Defendant Dana Fall from the action. [Doc. 23.] The Court also noted that Plaintiff voluntarily dismissed her retaliation cause of action. [*Id.* n.1.]

[Doc. 55.] Regarding Plaintiff's race discrimination claim, the Magistrate Judge concluded that Plaintiff "fail[ed] to present evidence to create an issue of fact as to whether her leadership qualifications were superior to [Allison's]." [*Id.* at 16.] Regarding Plaintiff's hostile-work-environment claim, the Magistrate Judge concluded that Plaintiff's evidence as to the District's conduct "[did] not meet the high bar necessary to satisfy the severe or pervasive test." [*Id.* at 18.] Finally, regarding Plaintiff's state law breach-of-contract claim, the Magistrate Judge recommended that the Court decline to exercise supplemental jurisdiction. [*Id.* at 19.]

**Plaintiff's Race Discrimination Claim**

In her objections, Plaintiff first argues that the Magistrate Judge "erroneously relie[d] upon [the District's] proffered justification for selecting Allison for the [p]rincipal position over Plaintiff . . . without adequately addressing the evidence raising questions as to whether that explanation [was] pretextual." [Doc. 56 at 6.] The Court disagrees; for the reasons stated herein, the Court concludes that Plaintiff has failed to meet her evidentiary burden on the issue of pretext.

The District's proffered justification for assigning Allison to the Corinth principal position over Plaintiff was that Allison "*consistently demonstrated strong leadership*, received a 'proficient' PADEPP evaluation, and had nearly ten years of elementary administrative experience in the District." [Doc. 51-1 at 6 ¶ 9 (emphasis added).] By contrast, Plaintiff was not offered an administrative position because she "had documented deficiencies in leadership based on the SAM survey (leadership score of '1' out of 3)." [*Id.*; *see also id.* at 17–18 (SAM survey results), 35 ¶ 16 ("Roberts was not selected out of the three principals due to evidence of deficient leadership quality in her

role as principal of [MBES].").] Although Plaintiff does not dispute the accuracy of the survey results [*see* Docs. 55 at 4 ¶ 9; 50-1 at 19–21], she argues that "the District's inconsistent reliance on the SAM/MTSS survey for Plaintiff while citing PADEPP results for Allison . . . undermines the legitimacy of its stated reasons" [Doc. 56 at 7].

As an initial matter, Plaintiff erroneously assumes that the district relied exclusively on the PADEPP in evaluating Allison's leadership capacity. While the district indeed referenced Allison "proficient" PADEPP evaluation, it also stated that Allison generally "demonstrated strong leadership." [Doc. 51-1 at 6 ¶ 9 (internal quotation marks omitted).] Moreover, as Plaintiff herself admits, "the record is silent as to whether Allison was even evaluated on the SAM/MTSS." [Doc. 56 at 10; *see also* Doc. 55 at 15 ("It is not clear from the record whether Allison was also evaluated with the SAM/MTSS survey, but, if she was, Plaintiff has not placed those results in the record.").] Without such evidence, a factfinder could not reasonably infer that the District applied inconsistent evaluative standards in assessing Plaintiff's and Allison's relative leadership qualifications. As the record currently stands, the District considered both Allison's and Plaintiff's general capacities for leadership, and the SAM/MTSS survey results were merely "one of the data points" used to address the candidates' leadership qualifications. [Doc. 51-1 at 36 ¶ 17.] Accordingly, "[Plaintiff's] assertions of discrimination in and of themselves are simply insufficient to counter unrebutted evidence of legitimate, nondiscriminatory reasons for an adverse employment action." *Dugan v. Albemarle Cnty. Sch. Bd.*, 293 F.3d 716, 722 (4th Cir. 2002).

Relatedly, Plaintiff argues that the burden should rest with the District to "produce the relevant records and demonstrate that similarly situated Caucasian administrators . . .

were subject to the same evaluative criteria and processes." [Doc. 56 at 7; *see also id.* ("Plaintiff had neither access to nor the ability to produce [Allison SAM/MTSS survey results], particularly where [the District] did not provide them during the [d]iscovery process.").] That is not the law. On the contrary, it is well established that the burden rests on Plaintiff, *not the District*, to produce evidence showing that the District's proffered reasons were pretextual. *See Dugan*, 293 F.3d at 723 ("[T]he burden remains on [the plaintiff] to demonstrate that the reasons offered by the school board are a pretext for discrimination, or stated differently, that the school board's reason is unworthy of credence to the extent that it will permit the trier of fact to infer the ultimate fact of intentional discrimination."). As for the District's alleged failure to provide relevant records during discovery, Plaintiff could have moved for an order compelling discovery under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 37(a)(3)(B).

Next, Plaintiff asserts that Allison was not the most qualified candidate because she "did not have as much experience as a [t]eacher and [a]dministrator as Plaintiff, who also had ten years[6] of [e]lementary [a]dministrative experience, but also [20] years of

---

[6] The Magistrate Judge concluded that "Plaintiff had six years of elementary administrative experience in the District compared to Allison's 'nearly ten years' of elementary education experience." [Doc. 55 at 16 (citing Doc. 53-2).] The record does not appear to clearly support this conclusion. Although Plaintiff's evaluation history indicates that the District evaluated Plaintiff using the PADEPP model for six consecutive school years [Doc. 53-2], the absence of recorded PADEPP evaluations in earlier school years does not negate the possibility that Plaintiff served as an administrator prior to the 2015–16 school year [*see, e.g.,* Doc. 53-9 at 175 (174:18–20) ("Assistant principals are not evaluated under the PADEPP model. It is only for principals.")]. According to the Complaint, "Plaintiff became an administrator for the [District]" in 2011. [Doc. 1 ¶ 7.] Moreover, Plaintiff testified that Allison "had less administrative experience than [Plaintiff] did." [Doc. 53-9 at 50 (49:3–4).] Nevertheless, for the reasons explained herein, that Plaintiff may have had ten—not six—years of relevant elementary administrative experience would not alter the Court's conclusion.

dedication as a teacher within the District . . . ." [Doc. 56 at 10 (footnote added).] As the Magistrate Judge correctly concluded, Plaintiff presents no evidence that her qualifications were *demonstrably* superior. [*See* Doc. 55 at 16]; *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 251 (4th Cir. 2006) ("When a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer."). Here, Plaintiff presents no facts highlighting Allison's *lack* of teaching experience, only Plaintiff's "[20] years of dedication as a teacher within the District." [Doc. 56 at 10.] Accordingly, a factfinder could not reasonably conclude that Plaintiff was a demonstrably more experienced teacher than Allison. *Compare to Heiko*, 434 F.3d at 259–62 (concluding that the plaintiff made a sufficient showing of pretext where he presented concrete facts showing that he was demonstrably better qualified than the selected candidate in multiple areas).[7]

Finally, Plaintiff argues that the Court erred in comparing Plaintiff and Henderson. [*See* Doc. 56 at 11 ("The relevant comparison is not between Plaintiff and Henderson—both of whom were passed over—but between Plaintiff and Allison, the white female who was selected.") However, courts consistently consider whether similarly situated individuals of the opposite class received identical treatment. *See, e.g., Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) ("The evidence shows that [the

[7] Of course, "an equally valid way to prove pretext is to provide evidence that the employer's proffered reason was not the actual reason relied on, but was rather a false description of its reasoning . . . ." *Dennis v. Columbia Colleton Med. Cntr., Inc.,* 290 F.3d 639, 648 n.4 (4th Cir. 2002). As discussed previously, Plaintiff has failed to present circumstantial evidence showing that the District's stated reason for its decision was not its actual reason, even if Plaintiff ultimately disagrees with the appropriateness of using the SAM/MTSS metric to make RIF decisions.

female plaintiff] was treated like the only other similarly situated individual . . .—[a male comparator] also held the position of inspector and was denied the opportunity to apply for the . . . opening . . . ."); *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 720 (7th Cir. 2021) ("There is no genuine dispute of fact that the comparators here were treated identically, so summary judgment was proper."). Accordingly, the Magistrate Judge did not err in concluding that Henderson's identical treatment undermines Plaintiff's race discrimination claim.

**Plaintiff's Hostile-Work-Environment Claim**

To survive summary judgment on a Title VII hostile-work-environment claim, a plaintiff must generate triable issues that "(1) the harassment was unwelcome; (2) the harassment was based on [the plaintiff's race]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Causey v. Balog,* 162 F.3d 795, 801 (4th Cir. 1998). In determining whether the plaintiff can meet this burden, the court must apply "[c]ommon sense" and "appropriate sensitivity to social context" to the "constellation of surrounding circumstances." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998).

The severe or pervasive conduct that gives rise to an abusive work environment must be both objectively and subjectively "hostile" or "abusive." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22 (1993). An objective analysis of whether a workplace is hostile or abusive looks to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

performance." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc) (internal quotation marks omitted). The ultimate inquiry is whether the conduct is so "extreme" that it "amount[s] to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

In her objections, Plaintiff claims that the Magistrate Judge erroneously evaluated her hostile work environment allegations in isolation rather than under the totality of the circumstances. [Doc. 56 at 12–13.] The Court disagrees. Considered as a whole, Plaintiff's forecasted evidence fails to create a genuine issue of material fact as to whether the District's conduct was objectively severe or pervasive. In particular, Plaintiff has not forecasted evidence that the District's conduct was unremitting, that anyone directly threatened her or exercised physical violence against her, or that anyone uttered offensive language in her presence. Rather, Plaintiff merely alleges that her superiors periodically excluded her from email communications, failed to provide immediate administrative support during her assistant principal's maternity leave, and used the SAM/MTSS survey to evaluate her leadership capacity. Such conduct, even if assumed to be true, is not so severe as to alter the conditions of Plaintiff's employment and create an abusive atmosphere. *Compare Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 182, 184–86 (4th Cir. 2001) (denying summary judgment where the plaintiff was exposed on a "continuous daily basis" to racial insults made by a supervisor in which he called a number of African-American employees "monkey[s]", "dumb monkey[s]", and "ni * * * * *"), *with Howerton v. Bd. of Educ. of Prince George's Cnty.,* No. TDC-14-0242, 2015 WL 4994536, at *15 (D. Md. Aug. 19, 2015) (finding that none of the race-based comments of the plaintiff's supervisor "involved any racial slurs or racially charged language so

offensive as to be 'physically threatening or humiliating'" and that the alleged incidents were separated by 10 months and involved different individuals). For these reasons, the Court grants summary judgment in Defendant's favor on the hostile-work-environment claim.[8]

**Plaintiff's State Law Breach-of-Contract Claim**

Plaintiff agrees with the Report's conclusion that the Court should decline to exercise supplemental jurisdiction over her state law breach-of-contract claim. [Doc. 56 at 14.] Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law breach-of-contract claim.

## CONCLUSION

For the reasons discussed, the Court accepts the Report and Recommendation of the Magistrate Judge and incorporates it by reference to the extent consistent with this Order. Accordingly, Defendant's motion for summary judgment [Doc. 52] is GRANTED as to Plaintiff's Title VII claims. The Court declines to exercise supplemental jurisdiction over the state law breach-of-contract claim, which is DISMISSED without prejudice.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

September 8, 2026
Greenville, South Carolina

[8] Because the third element—whether the conduct was severe or pervasive—is dispositive, the Court need not address the remaining elements of Plaintiff's hostile-work-environment claim: whether the harassment was unwelcome, whether the harassment was based on the plaintiff's race, or whether there was some basis for imposing liability on the employer.